**STANLEY LOJAK CONTRACTOR
and Erie Insurance Company,
Petitioners,**

v.

**WORKMEN'S COMPENSATION
APPEAL BOARD (COFFMAN),
Respondent.**

Commonwealth Court of Pennsylvania.

Argued June 5, 1995.
Decided July 18, 1995.

Robert A. Loch, for petitioners.

Allan C. Lundberg, for respondent.

Before DOYLE and FRIEDMAN, JJ., and NARICK, Senior Judge.

FRIEDMAN, Judge.

Stanley Lojak Contracting (Employer) and its insurer, Erie Insurance Company (Carrier), appeal from an order of the Workmen's Compensation Appeal Board (Board). The order amended the decision of the referee [1] by granting a suspension of benefits to Richard Coffman (Claimant) between November 1, 1989 and December 31, 1989, but reversed the referee's decision in all other respects and dismissed Employer/Carrier's Petition for Termination.

On July 14, 1989, Claimant sustained a left neck sprain while working for Employer and, effective August 7, 1989, Claimant began receiving worker's compensation pursuant to a Notice of Compensation Payable. Claimant returned to work on November 1, 1989 and continued in his job through December 31, 1989, when he was laid off from his employment.[2]

On October 10, 1990, Employer/Carrier filed a Petition for Termination, Suspension or Modification (Termination Petition), alleging that Claimant returned to work without restriction or loss of earning power on Sep-

tember 25, 1989.[3] (R.R. at 3a.) In answer to this Petition, Claimant denied these allegations and claimed that he returned to a light duty position on November 1, 1989, from which he was laid off effective January 1, 1990. (R.R. at 6a.)

On October 16, 1990, Claimant filed a penalty petition in which he alleged that Employer/Carrier refused to reinstate his benefits when he was laid off from his light duty position, even though Claimant never executed a Final Receipt or a Supplemental Agreement. (R.R. at 4a–5a.) Employer/Carrier filed an answer to the penalty petition denying any violation of The Pennsylvania Workmen's Compensation Act (Act), Act of June 2, 1915, P.L. 736, as amended, 77 P.S. §§ 1–1031.[4] (R.R. at 7a–9a.)

Following the filing of the penalty petition, Employer/Carrier scheduled Claimant for an independent medical evaluation with Dr. Bruce Wilder; however, on advice from his counsel, Claimant refused to make himself available for examination. At a June 7, 1991 hearing,[5] the referee questioned why Claimant had not been examined, and Claimant's counsel explained that he instructed his client to refuse to cooperate until Employer/Carrier paid Claimant his back benefits. (R.R. at 38a, 59a.) The referee continued the hearing with a discussion of other matters but concluded by directing Employer/Carrier to reschedule the examination. On July 30, 1991, Claimant attended the rescheduled evaluation with Dr. Wilder, following which Dr. Wilder issued a report based on his examination of Claimant and his review of pertinent medical records and diagnostic studies.[6]

---

1. Referees are now called Workers' Compensation Judges under the new amendments to the Workers' Compensation Act effective August 31, 1993, and here, the parties refer to the Workers' Compensation Judge rather than the referee. However, the hearing in this case occurred prior to the effective date of the new amendments and, in fact, the referee issued his decision prior to August of 1993; therefore, we will refer to the referee as such and not as "Workers' Compensation Judge."

2. Apparently, Claimant returned to work but did not return to work for Employer. (R.R. at 26a, 46a.) Although this is not entirely clear, (see,

e.g., R.R. at 39a, 42a, 43a), our opinion remains unaffected by either situation.

3. Employer/Carrier also requested a Supersedeas as of September 25, 1989.

4. On September 22, 1992, following payment of back benefits, Claimant withdrew his Penalty Petition. (R.R. at 214a.)

5. Hearings in this matter were also held on January 10, 1991 and September 22, 1992.

6. We note that included in the record, as part of the medical records considered by Dr. Wilder in

In his report, Dr. Wilder opined that Claimant was capable of returning to medium duty work; however, Dr. Wilder stated that any restrictions on Claimant were due to degenerative cervical spine disease and that Claimant was fully recovered from his work-related injury. (R.R. at 129a.) A copy of Dr. Wilder's report was forwarded to Claimant's counsel on September 5, 1991 (R.R. at 61a), and, in addition, counsel for Claimant was present at the September 30, 1991 deposition of Dr. Wilder, at which Dr. Wilder offered testimony consistent with his report. (R.R. at 76a–79a, 97a.) At the deposition, Claimant's counsel voiced no objections to Dr. Wilder's direct testimony, and he conducted extensive cross-examination of Dr. Wilder. Moreover, he lodged no objection to the admission of Dr. Wilder's deposition into evidence.

For his part, Claimant had scheduled the deposition of his treating physician, Dr. James Bradley, for January 30, 1992. On this date, Claimant's counsel as well as counsel for Employer/Carrier appeared at Dr. Bradley's office; however, after a pre-deposition conference between Claimant's counsel and Dr. Bradley, Claimant's counsel cancelled Dr. Bradley's deposition. No other depositions were ever scheduled, and when the referee closed the record on September 22, 1992, Claimant had offered no medical evidence, either in support of his penalty petition or in opposition to Employer/Carrier's Termination Petition.[7]

Based on the medical and lay evidence,[8] the referee found that Claimant had returned to work with no loss of earnings for the period from November 1, 1989 through December 31, 1989. Despite this finding, how-ever, the referee failed to suspend Claimant's benefits for that period. The referee also found that Claimant's testimony lacked credibility with regard to a continuing disability and that Claimant failed to offer any medical evidence of a continuing disability. Additionally, the referee found Dr. Wilder's testimony credible and determined that Claimant's disability had ceased as of July 30, 1991, the date of Dr. Wilder's independent evaluation; therefore, he terminated Claimant's benefits as of that date.

Employer/Carrier and Claimant both appealed the referee's decision to the Board. Employer/Carrier maintained that the referee erred by failing to suspend Claimant's benefits for the period from November 1, 1989 through December 31, 1989. (R.R. at 223a.) Claimant argued, on appeal, that the referee violated his constitutional due process rights by terminating his benefits as of July 30, 1991 when the Employer/Carrier's Petition, which was never amended, requested relief as of September 25, 1989. (R.R. at 233a.) In addition, for the first time in his brief to the Board, Claimant argued that the referee erred or committed an abuse of discretion in ordering Claimant to submit to an independent medical examination requested by Employer/Carrier. (R.R. at 254a.)

In a decision issued on August 4, 1994, the Board amended the referee's order, granting Employer/Carrier a suspension of Claimant's benefits between November 1, 1989 and December 31, 1989. However, the Board reversed the remainder of the referee's order and dismissed Employer/Carrier's Termination Petition.

making his evaluation, are reports dated September 6, 1989 and September 18, 1989. These medical reports, from Dr. Michael Casey and Dr. James Bradley, the doctors who treated Claimant after his initial injury, recommend Claimant's return to work, apparently without restriction. (R.R. at 117a, 118a.)

7. Claimant acknowledges that he submitted no medical evidence but contends that he had no need to do so. First, Claimant asserts that there was no need for medical evidence with regard to his penalty petition because it did not involve a medical issue. As to Employer/Carrier's Termination Petition, Claimant points out that Dr. Wil-der's medical testimony only referred to Claimant's condition in 1991, whereas Employer/Carrier's Termination Petition sought relief as of September 1989. Therefore, Claimant contends he did not need to offer medical evidence in opposition to the Termination Petition where Employer, the burdened party, failed to present any medical evidence to support it.

8. In addition to Dr. Wilder's deposition, Employer/Carrier also introduced depositions from Michael Vincent and Bart Barker, investigators who conducted surveillance of Claimant doing certain physical tasks.

Reasoning that Claimant could not properly defend against a matter essentially raised *sua sponte* by the referee, the Board agreed with Claimant's due process argument and held that the referee lacked authority to terminate Claimant's benefits as of July 30, 1991, one year and ten months after the date of relief requested by Employer/Carrier's Petition. In addition, the Board noted that, as a matter of policy, an employer is not entitled to prove a termination petition by use of a subsequently ordered independent medical examination; accordingly, the Board concluded that the referee had no statutory or case law authority to order Claimant to attend the independent medical examination here for the primary purpose of strengthening Employer/Carrier's Termination Petition filed almost two years earlier.

■ On appeal,[9] Employer/Carrier argues that the Board erred by holding that the referee lacked authority (1) to terminate Claimant's benefits as of July 30, 1991 when the Termination Petition requested a termination of benefits as of September 25, 1989 or (2) to order Claimant to submit to an independent medical examination subsequent to the filing of the Termination Petition.

I.

In determining that the referee lacked authority to terminate Claimant's benefits as of July 30, 1991, the Board agreed with Claimant that this case is controlled by our decisions in *Boehm v. Workmen's Compensation Appeal Board (United Parcel Services)*, 133 Pa.Commonwealth Ct. 455, 576 A.2d 1163 (1990), and *Thomas v. Workmen's Compensation Appeal Board (Winzek Catering Service)*, 104 Pa.Commonwealth Ct. 361, 522 A.2d 115 (1987), *vacated and remanded*, 518 Pa. 554, 544 A.2d 958 (1988), which are relied

on for the broad proposition that a referee cannot *sua sponte* grant relief not requested by an employer. In response, Employer/Carrier asserts that this case is easily distinguished from both *Boehm* and *Thomas*, and cites *Yezovich v. Workmen's Compensation Appeal Board (USX Corp.)*, 144 Pa.Commonwealth Ct. 601, 601 A.2d 1341 (1992) to support the contention that the referee properly terminated benefits as of July 30, 1991. We agree with Employer/Carrier.

Although, in both *Boehm* and *Thomas*, we disallowed the grant of relief not requested, those cases were based on circumstances significantly different from those presented here. By comparison, there are significant similarities between the present case and the facts in *Yezovich*. In *Yezovich*, the referee modified the claimant's benefits as of June 6, 1986 rather than November 24, 1986 as requested by the employer in its petition, basing the decision on a finding that a job became available on the earlier date which the claimant could perform. On appeal from the Board's order affirming that decision, the claimant, like Claimant here, relied on *Boehm* and *Thomas* to support the argument that the referee did not have power to *sua sponte* grant relief that the employer had not requested and, therefore, the referee erred in amending the effective date of the modification. We disagreed and distinguished *Yezovich* from *Boehm* and *Thomas*.[10] We noted that, unlike the claimants in *Boehm* and *Thomas*, the claimant in *Yezovich* was aware that the employer sought to suspend benefits and the reasons therefor, and that he had the opportunity to respond to those assertions before the referee. Thus, we concluded that the referee could make his decision even where the employer did not amend the petition. We can apply the same reasoning here.

---

9. Our scope of review is limited to determining whether constitutional rights were violated, whether an error of law was committed or whether necessary findings of fact are supported by substantial evidence. Section 704 of the Administrative Agency Law, 2 Pa.C.S. § 704.

10. In drawing those distinctions, we stated:
   In *Boehm*, the referee's error was to look beyond the pleadings and to grant an unsolicited termination of benefits after the close of hearing thereby effectively denying the claimant an

opportunity to prepare for and respond to a termination of benefits. Though vacated on other grounds, *Thomas* may be distinguished in that the Board sua sponte modified the effective date of employer's request for modification of disability, thus raising an issue not before it on appeal from the referee's decision. *Yezovich*, 144 Pa.Commonwealth Ct. at 609, 601 A.2d at 1344. These same distinctions apply here.

■ Section 413 of The Pennsylvania Workmen's Compensation Act (Act), Act of June 2, 1915, P.L. 736, *as amended,* 77 P.S. § 772, states in pertinent part:

A referee ... may, at any time, modify, reinstate, suspend, or terminate a notice of compensation payable ... upon petition filed by either party with the department, upon proof that the disability of an injured employe has increased, decreased, recurred, or has temporarily or finally ceased, or that the status of any dependent has changed. Such modification, reinstatement, suspension or termination shall be made as of the date upon which it is shown that the status of any dependent has changed. . . .

We have previously construed section 413 of the Act as empowering a referee to take the appropriate action as indicated by the evidence upon the filing of any petition referenced therein by either party. *Hawkins v. Workmen's Compensation Appeal Board (Medical College of Pennsylvania),* 138 Pa.Commonwealth Ct. 180, 587 A.2d 387 (1991); *Bell Telephone Co. v. Workmen's Compensation Appeal Board (Rothenbach),* 98 Pa.Commonwealth Ct. 332, 511 A.2d 261 (1986). Although, under *Boehm,* a referee may not go beyond the pleadings to grant a termination where one is not requested, a referee may grant relief beyond that requested in an employer's petition where the claimant would not have been misled by the form of the petition, would have had notice of the relief sought by the employer and would have had a full and fair opportunity to contest the basis of the employer's assertions. *Yezovich.* Here, all these conditions are met.

■ First, unlike the claimant in *Boehm,* Claimant here would not have been misled by the form of the Petition because Employer/Carrier always sought to terminate Claimant's benefits. Moreover, on September 5, 1991, Employer/Carrier supplied Claimant with a copy of Dr. Wilder's report containing his opinion that Claimant had fully recovered from his work-related injury as of July 30, 1991. Thus, more than a year before the record in this matter was closed, Claimant had notice that Employer/Carrier was seeking to terminate benefits effective July 30, 1991, the date of Dr. Wilder's evaluation, rather than the date originally requested in their Petition. Finally, we note that Claimant, who was represented by counsel at all hearings and depositions, had a full and fair opportunity to contest the basis of Employer/Carrier's Petition. In particular, Claimant's counsel was present at Dr. Wilder's deposition on September 30, 1991, and because he conducted an extensive cross-examination of Dr. Wilder at that time, Claimant was well aware of the basis for Employer/Carrier's assertions and cannot claim surprise with regard to Dr. Wilder's testimony. Moreover, Claimant had ample opportunity to rebut this evidence by submitting medical evidence of his own in opposition to that presented by Employer/Carrier. Indeed, Claimant attempted to do just that by deposing his treating physician, Dr. Bradley. However, after consulting with Dr. Bradley, Claimant cancelled the deposition and chose *not to obtain other medical evidence to counter* Employer/Carrier's contentions. Under these circumstances, the referee acted within his power and authority to *sua sponte* amend the date of relief requested in the initial Petition to conform to the evidence which was presented and to grant relief accordingly. *Yezovich.*[11]

## II.

■ In its decision, the Board stated that the referee had no statutory or case law authority to order Claimant to undergo an independent medical examination for the primary purpose of strengthening Employer/Carrier's previously filed Termination Petition. Employer/Carrier contends that the Board erred in making this statement and

---

11. Claimant and the Board attempt to distinguish this case from *Yezovich* on the basis that the referee there utilized a date only four or five months beyond the date alleged in the employer's petition, whereas in this case, the referee utilized a date one year and ten months beyond the date alleged in the Petition. We recognize that the time factor is different in the two cases and that the length of time involved in this case warrants a particularly close examination of its facts. However, having considered the circumstances carefully, we believe the rationale in *Yezovich* remains applicable here.

offers three arguments in support of that contention.[12] Initially, however, we note that, before the referee, Claimant never voiced any objection to the examination as such; in fact, Claimant's initial refusal to submit to the examination was explained merely as a tactic on the part of Claimant's counsel to prompt Employer/Carrier to pay back benefits. (R.R. at 38a.) Following this explanation, the referee went on to discuss the matter of back pay with the parties. At the close of the hearing, after the matter was resolved, (R.R. at 44a–45a), the referee directed the medical examination to take place. (R.R. at 53a.) Claimant complied with this directive without further objection and his subsequent attendance at the examination indicates that he consented to it.[13] Moreover, Claimant's counsel did not object to the deposition of Dr. Wilder or the submission of the deposition and examination results into evidence. (R.R. at 79a.) Finally, Claimant's appeal from the referee's decision, (R.R. at 233a), made no mention of the medical examination, and properly so because Claimant had voluntarily submitted to it. Indeed, the whole idea of the examination only appears to have become a problem for Claimant in his brief to the Board. However, because Claimant had submitted to the medical examination without objection, there was no unresolved issue of referee error for appeal.

Accordingly, we affirm the Board's order to the extent that it granted a suspension of benefits to Claimant between November 1, 1989 and December 31, 1989, but we reverse that order in all other respects, and we reinstate the referee's decision to terminate Claimant's benefits as of July 30, 1991.

*ORDER*

AND NOW, this 18th day of July, 1995, the order of the Workmen's Compensation Appeal Board, dated August 4, 1994, is affirmed to the extent that it granted a suspension of benefits to Richard Coffman between November 1, 1989 and December 31, 1989, but is reversed in all other respects, thereby reinstating the referee's decision to terminate benefits to Richard Coffman as of July 30, 1991.

**12.** First, Employer/Carrier argues that because Claimant did not raise this issue in his actual appeal filed from the referee's order, but raised it for the first time in his brief to the Board, he did not properly preserve the issue for appeal. Alternatively, Employer/Carrier asserts that, in making this statement, the Board misconstrued the evidence because the referee, in fact, never *ordered* Claimant to submit to a medical evaluation but merely directed Employer/Carrier to reschedule the examination. Finally, Employer/Carrier maintains that even if the referee did order Claimant to attend the medical evaluation, the referee *acted within his authority in doing so* because Employer/Carrier scheduled the exami-

nation, not to strengthen their Termination Petition, but to counter claims of residual disability made in Claimant's Penalty Petition. Because we have determined that the medical examination provided no appealable issue, we need not consider Employer/Carrier's various arguments.

**13.** Claimant could have refused to appear at the scheduled medical evaluation and forced Employer/Carrier to file a petition under section 314 of the Act, 77 P.S. § 651, asking that Claimant be ordered to submit to the examination. However, this did not occur.