**Michael FRONTINI, Petitioner,**

v.

**WORKERS' COMPENSATION APPEAL BOARD (PARKS MOVING & STORAGE), Respondent.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs June 13, 1997.
Decided Oct. 17, 1997.

Anthony S. Piatek, New Castle, for petitioner.

Dale A. Cable, Pittsburgh, for respondent.

Before FRIEDMAN and LEADBETTER, JJ., and LORD, Senior Judge.

LORD, Senior Judge.

Michael Frontini (Claimant) appeals an order of the Workers' Compensation Appeal Board (Board) affirming a Workers' Compensation Judge's (WCJ) decision to terminate Claimant's benefits.

While employed with Parks Moving & Storage (Employer), Claimant suffered a work-related injury to his right hand on December 18, 1993 for which he received total disability benefits. (WCJ's Findings of Fact, Nos. 3, 5.) On February 4, 1994, Claimant unintentionally signed a final receipt, believing that he was merely signing a receipt for his benefits check. (WCJ's Finding of Fact, No. 5.) Subsequently, Claimant filed a petition to set aside the final receipt as of February 11, 1994, alleging that he had never signed a final receipt, that he had not fully recovered from his work injury and that he

had not returned to work at wages equal to his time-of-injury wages. (WCJ's Finding of Fact, No. 1.) The employer answered claimant's petition denying all the allegations contained therein, averring that claimant signed a final receipt acknowledging that he was able to return to work without loss of earning power. Employer's answer specifically denied that claimant was not fully recovered from his work-related injury and was not released to return to work by his examining physician.

At hearings before the WCJ on Claimant's petition, Claimant testified that, although he was asked to sign a final receipt on February 4, 1994, he refused to do so because he was still having problems with his right hand and was still receiving medical treatment. Claimant did sign the final receipt at that time, but apparently because he thought it was a receipt for his benefits check. Although he gave contradictory statements regarding the extent of his abilities, Claimant further testified that he remained disabled as a result of the work-related injury.

Claimant offered the deposition testimony of Christopher Morgan, M.D., a specialist in physical medicine and rehabilitation. Dr. Morgan testified that he had treated Claimant since the work-related injury and had released Claimant to return to work on February 11, 1994, even though Dr. Morgan did not consider Claimant to be fully recovered from his work-related injury at that time. Dr. Morgan also stated that, on February 25, 1994, he began to believe that Claimant might be suffering from reflex sympathetic dystrophy in his right hand and, accordingly, Dr. Morgan restricted Claimant to modified duty with limited use of his right hand. As of March 25, 1994, Dr. Morgan recommended that Claimant not use his right hand or wrist at all, and, as of April 19, 1994, Dr. Morgan diagnosed Claimant as suffering from reflex sympathetic dystrophy.

In support of its answer to Claimant's petition, Employer presented the testimony of Anthony Babusci, Employer's operations manager. Babusci denied that he told Claimant he was merely signing a receipt for his check; however, Babusci also stated that he informed Claimant that he had to sign the form in order to receive his check.

In opposition to Claimant's medical testimony, Employer presented the deposition testimony of Robert P. Mantica, M.D., a board-certified orthopedic surgeon, who examined Claimant on May 23, 1994. Based upon this exam, and on Claimant's medical records, Dr. Mantica opined that Claimant does not suffer from reflex sympathetic dystrophy and, as of the date of the exam, could return to work upon completion of a work-hardening program. Employer also offered the testimony of Brian McDowell to prove that Claimant was not suffering a disability in his right hand. McDowell testified that, on March 25, 1995, he observed Claimant punch his girlfriend, Carol Boyer, on the left side of her face with his right hand and saw Claimant lock fingers with her and twist her hands back until she fell to the floor. McDowell then took Boyer to the hospital because she was complaining of pain in her hands. Boyer's testimony corroborated that of McDowell. Claimant acknowledged that he had a confrontation with Boyer on that day, but denied that it became physical. The WCJ, however, believed McDowell's and Boyer's version of events, in which Claimant used his right hand with enough strength to hurt Boyer. (WCJ's Findings of Fact, Nos. 9—11.)

The WCJ made various credibility determinations based upon the testimony. The WCJ found Claimant's testimony reliable and credible with regard to his signature on the final receipt; however, the WCJ rejected Claimant's testimony in which he indicated that he continues to suffer significant residual problems as a result of the work-related injury. (WCJ's Finding of Fact, No. 5.) The WCJ rejected as neither credible nor convincing Dr. Morgan's opinion that Claimant suffers from reflex sympathetic dystrophy and continues to be partially disabled. (WCJ's Finding of Fact, No. 13.) In contrast, the WCJ found credible and "very convincing" Dr. Mantica's testimony that Claimant does not suffer from reflex sympathetic dystrophy and is able to return to work. (WCJ's Finding of Fact, No. 15.)

Having made these credibility determinations, the WCJ found that Claimant had not knowingly executed a final receipt. The WCJ also found that claimant had not fully recovered from his work injury at the time he mistakenly signed the final receipt; however, the WCJ found that Claimant had fully recovered as of May 23, 1994. (WCJ's Finding of Fact, No. 24.) Based on these findings, the WCJ concluded that the Claimant had met his burden of proving that the final receipt should be set aside, and also concluded that Employer had met its burden of proving that Claimant was no longer disabled by his work injury. Thus, the WCJ ordered Claimant's benefits to be reinstated through May 22, 1994, and terminated as of May 23, 1994. Claimant appealed to the Board, which affirmed.

■ On appeal to this Court, Claimant argues that the Board erred in affirming the WCJ's termination of benefits because Employer never filed a petition requesting termination of those benefits. Claimant relies principally on the authority of *Boehm v. Workmen's Compensation Appeal Board,* 133 Pa.Cmwlth. 455, 576 A.2d 1163 (1990). Employer counters claimant's argument by asserting that, because Claimant was on notice that Employer sought termination, Employer did not need to file a separate termination petition.

In *Boehm,* an employer filed a modification petition, alleging that the claimant had returned to light duty work. After consideration of the evidence, the referee concluded that the claimant was partially disabled for a limited period and that his disability terminated after that period. Although the WCAB affirmed, we reversed, concluding that the referee erred when he decided, *sua sponte,* to consider the employer's petition for modification as a petition for both modification and termination. In doing so, we rejected the employer's argument that neither a claimant nor an employer is bound by the

form of the petition where the facts warrant relief. Noting that the Workers' Compensation Act[1] is remedial and intended to benefit the worker, we concluded that a referee could look beyond the pleadings only where the facts warranted relief *for a claimant;* with respect to an employer, we held that a referee was empowered to grant only such relief as the employer actually requests. Because the employer in *Boehm* only requested a *modification* of the claimant's benefits, we determined that the referee lacked authority to *terminate* those benefits.

Subsequent to our decision in *Boehm,* we have had occasion to address the issue of a WCJ's authority "to take appropriate action as indicated by the evidence upon the filing of any petition referenced therein by either party." *Stanley Lojak Contractor v. Workmen's Compensation Appeal Board (Coffman),* 661 A.2d 923, 927 (Pa.Cmwlth.1995).

In *Lojak Contractor,* the employer filed a termination petition alleging that the claimant had returned to work without restriction or loss of earning power. The claimant thereafter filed a penalty petition which was answered by the employer. The referee terminated benefits as of one year and a half after the date requested by the employer in its termination petition, although the employer had never amended that termination petition. The Board, citing *Boehm* and *Thomas v. Workmen's Compensation Appeal Board (Winzek Catering Service),* 104 Pa.Cmwlth. 361, 522 A.2d 115 (1987), *vacated and remanded,* 518 Pa. 554, 544 A.2d 958 (1988) reversed the referee's decision.

On appeal, this Court reversed the Board's decision and held that the referee acted within his authority to amend the date of the relief requested in the initial termination petition and to grant the relief accordingly. *Lojak Contractor,* 661 A.2d at 927. Referring to the authority granted to referees by Section 413 of the Act,[2] we said there that

1. Act of June 2, 1915, P.L. 736, *as amended,* 77 P.S. §§ 1–1041.4.

2. Prior to recent amendments in the Act, WCJs were referred to as referees. Section 413 of the Act, 77 P.S. § 772, states in pertinent part that:

A worker's compensation judge … may, at any time, modify, reinstate, suspend, or terminate a notice of compensation payable, an original or supplemental agreement or an award … upon petition by either party with the department, upon proof that the disability of an injured employe has increased, de-

Although, under *Boehm,* a referee may not go beyond the pleadings to grant a termination where one is not requested, a referee may grant relief beyond that requested in an employer's petition where the claimant would not have been misled by the form of the petition, would have had notice of the relief sought by the employer and would have had a full and fair opportunity to contest the basis of the employer's assertions.

*Id.*

Although in *Lojak Contractor,* the issue of termination was joined by the filing of a termination petition, whereas here it has not been joined by such a pleading, we explained in *Hutter v. Workmen's Compensation Appeal Board,* 665 A.2d 554 (Pa.Cmwlth.1995), the authority of a WCJ to terminate disability compensation in the absence of a petition requesting termination. In *Hutter,* the employer had filed two petitions for review (though styling them termination petitions) prior to the claimant's filing of the petition to set aside a final receipt. The referee never reached a decision on the employer's two petitions, deciding that they were moot when claimant signed a final receipt subsequent to their filing. The employer contended that the only petition before the referee was the claimant's set aside petition, and the Board's decision was based only on that petition. *See id.,* 665 A.2d at 555, n. 3. An extensive reference to *Hutter* is pertinent to our decision here.

> Generally, if an employer wants to change the character of the disability, it must file a petition specifically requesting the relief sought. *Keystone Bakery, Inc. v. Workmen's Compensation Appeal Board (Lack),* 88 Pa.Cmwlth. 111, 488 A.2d 668 (1985). There are numerous cases, however, where a referee properly terminated a claimant's disability benefits even though the employer had not filed a termination petition.
>
> The first category of cases consist of instances in which a claimant files a claim

petition and he/she is granted disability benefits for a closed period of time which are then terminated without a termination petition being filed by the employer. *E.g. Connor v. Workmen's Compensation Appeal Board (Super Sucker, Inc.),* 155 Pa. Cmwlth. 102, 624 A.2d 757 (1993), *petition for allowance of appeal denied,* 535 Pa. 676, 636 A.2d 635 (1993). The rationale underlying the termination of disability benefits is that the claimant has the burden of proving the extent of his disability, and a referee may accordingly determine for what period of time such disability existed. *Id.; See also Inglis House v. Workmen's Compensation Appeal Board (Reedy),* 535 Pa. 135, 634 A.2d 592 (1993) *Thomas v. Workmen's Compensation Appeal Board (George's Painting Contractors),* 157 Pa.Cmwlth. 207, 629 A.2d 251 (1993).

The second category where a termination of benefits is proper without a formal termination petition having been filed involves cases in which the employer filed another type of petition but puts the claimant on notice that it is seeking a termination of benefits. *E.g., Bell Telephone Co. v. Workmen's Compensation Appeal Board (Rothenbach),* 98 Pa.Cmwlth. 332, 511 A.2d 261 (1986) (the referee did not err in treating employer's answer to claimant's review petition as a petition for termination of benefits because the employer's answer put the claimant on notice that the employer was seeking to terminate benefits). A referee may properly consider an employer's petition for modification of benefits as a petition for termination "where the claimant would not have been misled by the form of the petition, had notice of the relief sought by employer, and had a full and fair opportunity to contest the basis for the employer's assertions." *Id.,* 144 Pa.Cmwlth. 601, 609–10, 601 A.2d 1341, 1342; *Boehm. Cf. Yezovich v. Workmen's Compensation Appeal Board (USX Corp.),* 144 Pa.Cmwlth. 601, 601 A.2d 1341 (1992) (although the employer filed a termination

creased, recurred, or has temporarily or finally ceased, or that the status on any dependent has changed....

The 1996 amendment to this section of the Act substituted "workers' compensation judge" for "referee" but did not otherwise substantially alter it.

petition the referee properly granted a modification, because in its petition, employer alleged that there was work available within the claimant's capabilities; therefore, the claimant was aware of the type of relief the employer sought).

In this case, Claimant in the first instance succeeded in her petition to set aside the final receipt, *but the referee and Board went further and examined the total period and extent of that disability; therefore, her benefits were terminated as of the date Employer's doctor examined Claimant.* Although Employer had filed no formal petition for termination, notice was given to Claimant that it sought a termination of disability benefits, and there certainly was no surprise to Claimant that Employer was seeking termination. Claimant was provided with the deposition of Employer's medical expert, and the deposition emphatically stated that Claimant was no longer injured as of February 27, 1992, the date the expert examined her. This clearly notified Claimant that Employer was seeking a termination. There was, therefore, no prejudice to defend against the termination request.

*Id.,* 665 A.2d at 556–557 (footnote omitted) (emphasis added).

Thus, this Court in *Hutter* described two types of cases in which a termination of benefits is appropriately ordered even though a termination petition has not been filed and we sanctioned the termination of benefits in a third category of cases, in which the procedural circumstances are much like those before us now. That is, in *Hutter,* no viable termination petition was considered by the referee; only the claimant's set aside petition was to be decided. The claimant was successful in that set aside petition, but "the referee and Board went further and examined the total period and extent of that disability."

Here, the Employer in its answer to claimant's set aside petition expressly denied that claimant was not fully recovered from his work-related injury and denied that claimant had not been released to return to work by examining physicians. Claimant was therefore on notice that Employer intended to

show that the status quo existed—that is, that the termination of benefits which had been effectuated by claimant's signing of a final receipt was warranted by the evidence.

Claimant's set aside petition was filed April 4, 1994. Claimant was examined by Employer's medical expert May 23, 1994. That expert's March 9, 1995 deposition and his attached report, in which he stated that he found no objective symptoms and no reason claimant could not return to work, was available to the claimant. The expert was cross-examined in that deposition by claimant's counsel. Moreover, as noted, Employer offered the testimony of two eyewitnesses to an altercation in which Claimant was involved to prove that Claimant was not suffering a disability. The WCJ credited, over that of Claimant, those witnesses' version of events, in which they testified that Claimant punched his girlfriend with his right hand. Claimant was aware that Employer intended to prove that Claimant was no longer disabled from his work-related injury; he had ample opportunity to refute Employer's allegations.

We stated in *Anzaldo v. Workmen's Compensation Appeal Board (M & M Restaurant Supply),* 667 A.2d 488, 491 (Pa.Cmwlth. 1995) that

[s]trictness of pleadings in workmen's compensation cases is not required. *Dunmore School District v. Workmen's Compensation Appeal Board (Lorusso),* 89 Pa. Cmwlth. 368, 492 A.2d 773 (1985). If one party effectively puts the adverse party on notice as to the theory of relief which it is seeking, the referee will be authorized to grant the relief requested. *St. Francis Hospital v. Workmen's Compensation Appeal Board (Kerr),* 156 Pa.Cmwlth. 605, 628 A.2d 920 (1993), *petition for allowance of appeal denied,* 537 Pa. 669, 644 A.2d 1205 (1994). Where an employer puts a claimant on notice that it is seeking a termination of claimant's disability benefits, the referee may properly terminate claimants' benefits. *Hutter v. Workmen's Compensation Appeal Board (Pittsburgh Aluminum Company),* 665 A.2d 554 (Pa. Cmwlth.1995). It is not necessary for the

employer to file a formal termination petition. *Id.*

We acknowledged in that case that "[t]he underlying rationale for not allowing a referee to grant relief which an employer had not requested is that doing so is prejudicial to the claimant, who, never having been put on notice that the employer seeks such relief, has no opportunity to defend against it." *Id.*, 667 A.2d at 492. Certainly no prejudice caused by lack of notice was suffered by Claimant here, where benefits had already been terminated by the signing, albeit mistaken, of a final receipt prior to the filing of a set aside petition; where the answer to the set aside petition alleged facts which, if proved, would entitle Employer to termination; and where Claimant was aware that Employer intended to adduce expert and lay witness testimony to prove that claimant no longer suffered disability from his work-related injury.

Since Claimant's benefits were terminated by the final receipt, Employer could not have petitioned to terminate them in the first place. We see no purpose to have been served, then, by requiring the Employer to file a form pleading for termination of benefits where the WCJ was well able to conclude, based on credible evidence, that Employer established Claimant's full recovery four months after the final receipt was mistakenly signed.

 For these reasons, and following the precedent established in *Hutter,* we will affirm the Board's decision to uphold the WCJ's order of termination, even though no petition for termination had been filed. As for Claimant's argument that there is in that event no substantial, unequivocal evidence to support the WCJ's finding that Claimant's disability from his work-related injury had ceased, we need only refer once more to the credited medical testimony. Specifically, Dr. Mantica stated, *inter alia,* that he "found nothing on the examination of [Claimant's] hand, forearm and wrist of the right that

show orthopedic deficit." (Notes of Testimony, Deposition of Robert P. Manitica, M.D., March 9, 1995, p. 16) and opined he found no objective reason for Claimant's complaints of pain. He also opined with the requisite certainty that Claimant was not suffering reflex sympathetic dystrophy. That Claimant's experts offered contradictory opinions is of no moment, since the WCJ, who is the sole judge of the weight and credibility of evidence, *see, e.g., Crenshaw v. Workmen's Compensation Appeal Board (Hussey Copper),* 165 Pa.Cmwlth. 696, 645 A.2d 957 (1994), found them not to be credible.

We will affirm the Board's decision.

### ORDER

AND NOW, this 17th day of October, 1997, the order of the Workers' Compensation Appeal Board (WCAB), dated December 12, 1996, at A96–0936, is affirmed.

FRIEDMAN, J., dissents and files opinion.

FRIEDMAN, Judge, dissenting.

Reluctantly, I must agree that *Hutter v. Workmen's Compensation Appeal Board (Pittsburgh Aluminum Co.),* 665 A.2d 554 (Pa.Cmwlth.1995) appears to compel the result reached by the majority here; however, because I believe that *Hutter* fails to comport with principles that have been well established under the Workers' Compensation Act (Act),[1] I respectfully dissent.

As the majority points out, the procedural circumstances in *Hutter* are extremely similar to those currently before us. In *Hutter,* as here, the claimant appealed from an order of the Workers' Compensation Appeal Board (Board) affirming a referee's decision to terminate the claimant's benefits based solely upon the claimant's petition to set aside a final receipt. Further, in both cases, the claimant succeeded in the petition to set aside, and the employer had not filed a termination petition.[2]

---

1. Act of June 2, 1915, P.L. 736, *as amended,* 77 P.S. §§ 1—1041.4.

2. Actually, in *Hutter,* prior to the claimant's signing of the final receipt, the employer had filed two petitions which it designated as "termi-

nation" petitions. However, neither of these petitions were viable termination petitions because neither alleged a proper basis for granting a termination petition, i.e., that the claimant had fully recovered from her injury. The first "termi-

In considering whether a termination could be granted under these circumstances, we noted in *Hutter* that, once a claimant succeeds on a petition to set aside,[3] it is as if the final receipt was never signed, and the original compensation agreement automatically revives. We also recognized that, at that point, an employer wanting to alter the compensation under the original agreement must file a petition requesting specific relief and bear the burden of proving entitlement to the relief sought through its petition. *Id.* However, acknowledging that there are exceptions to this general rule, we described two types of cases in which a referee could properly terminate benefits even though the employer did not file a termination petition. In addition, we created a third category of such cases, approving termination in the absence of a petition under the procedural circumstances in *Hutter*.[4] It is this third category of cases that I find offensive.

Indeed, I have no difficulty with the two other types of cases presented in *Hutter*. In the first of these categories, where the *claimant filing a claim petition* is granted benefits for a closed period, benefits are terminated only because the claimant has *failed to meet his or her burden under the filed petition* to prove entitlement to benefits beyond a date certain. In the second category, where the *employer has filed a petition* other than a formal termination petition but, in all respects, puts the claimant on notice that termination is sought, the claimant is fully aware that he or she faces a mislabeled "termination" petition; thus, termination is proper if the *employer meets its burden under the petition* to prove that all of the claimant's disability has ceased. These cases are very different from the third category created in *Hutter,* sanctioning the termination of a claimant's benefits even though the claimant was the only one to file a petition and succeeded .in satisfying his or her burden under that petition.

An examination of the chronology of events in this case reinforces my belief that termination is inappropriate under such circumstances. Here, Michael Frontini (Claimant) mistakenly signed a final receipt on February 4, 1994. On February 11, 1994, Christopher Morgan, M.D., Claimant's treating physician, released Claimant to return to work, *although he was not fully recovered.* Claimant filed his set aside petition on April 4, 1994, and on May 6, 1994, Parks Moving and Storage (Employer) filed its answer, specifically denying that Claimant was not fully recovered and was not released to return to work by his examining physician. Claimant was first examined by Robert P. Mantica, M.D., Employer's physician, on May 23, 1994, and Dr. Mantica was deposed on March 9, 1995. Two significant problems emerge from these dates.

First, I note that, Claimant was released to work only *after* he signed the final receipt and, even when Dr. Morgan released Claim-

---

nation" petition alleged that the claimant's injury was not work-related and, thus, that petition was actually a petition for review. The second "termination" petition alleged that the claimant returned to work without a loss of earnings and, thus, *the employer should have filed a modification petition requesting suspension. Hutter.* Additionally, at the time these "termination" petitions were filed, the employer's doctor had not yet examined the claimant and, thus, the employer had no medical evidence to support a termination of benefits. *Id.*

3. Pursuant to section 434 of the Act, 77 P.S. § 1001, to set aside a final receipt a claimant must prove by sufficient, competent, credible evidence that all disability related to his or her work-related injury had not ceased at the time he or she signed the final receipt. *Hutter.*

4. In *Hutter,* the claimant sustained a work-related injury on April 23, 1990, and began receiving disability benefits. On March 14, 1991, the employer filed a "termination" petition alleging that the claimant's injury was not work-related. Then, on March 18, 1991, the claimant returned to work in a light duty position, whereupon the employer filed a "termination" petition asserting that the claimant had returned to work without a loss in earning power. A few days later, on April 12, 1991, the claimant signed a final receipt. Soon after, she was forced to stop working and, on September 9, 1991, she filed a petition to set aside the final receipt, contending that she had not fully recovered when she signed the final receipt in April of 1991. The claimant succeeded in her set aside petition based on the testimony of her treating physician; however, the referee and Board examined the total period and extent of the claimant's disability and terminated her benefits as of February 27, 1992, the date that Employer's doctor examined the claimant.

ant, it was with the understanding that Claimant had not made a full recovery from his work-related injury. Although section 434, as amended by the Act of December 5, 1974, P.L. 736, provides that a final receipt given by an employee is prima facie evidence of termination of the employer's liability to pay compensation, the regulation pertaining to termination of liability by final receipt, 34 Pa.Code § 121.17(a) (emphasis added),[5] provides:

> If an injured employe has recovered from his injury so that he has regained his full earning power, *and so that all disability due to the injury has terminated,* a final receipt may be fully prepared for signature. The fact that the employe returns to similar work at his original or greater wage unaccompanied by a showing that all disability has terminated, is not a basis for a final receipt. However, it may be the basis for a suspension of compensation.

Here, before Claimant's doctor had ever approved Claimant's return to work, Employer prepared a final receipt for Claimant signifying that Claimant had fully recovered from his injuries and had been released to return to work. Further, Employer induced Claimant to sign this final receipt without explaining its significance and with the knowledge that Claimant, in fact, remained disabled. Previously, we have deemed such conduct to be fraudulent. *See Crawford v. Workmen's Compensation Appeal Board (Peugot Contracting),* 134 Pa.Cmwlth. 89, 577 A.2d 966 (1990). The majority notes that, because Claimant's benefits were terminated by the final receipt, no purpose would be served by requiring Employer to file a form pleading to terminate benefits; however, I believe that by excusing Employer from filing a properly supported termination petition under the circumstances here, we essentially reward Employer for what is tantamount to fraudulent behavior.

The majority also reasons that Claimant was not prejudiced by the grant of termination where Employer provided notice to Claimant in the answer to Claimant's set aside petition that Employer intended to adduce expert and lay witness testimony to prove that Claimant was no longer disabled.[6] However, to the extent that the majority would equate Employer's filing of an answer to the set aside petition to the filing of a termination petition, I would point out that, at the time Employer filed its answer on May 6, 1994, Dr. Mantica had not yet examined Claimant. Thus, Employer did not possess any medical evidence that Claimant was fully recovered. Previously, we have held that an employer cannot reasonably contest liability before it has obtained the medical evidence to justify that contest. *See Lewistown Hospital v. Workmen's Compensation Appeal Board (Kuhns),* 683 A.2d 702 (Pa.Cmwlth. 1996); *Kuney v. Workmen's Compensation Appeal Board (Continental Data Systems),* 127 Pa.Cmwlth. 628, 562 A.2d 931 (1989), *appeal denied,* 527 Pa. 605, 589 A.2d 694 (1990); *MacNeill v. Workmen's Compensation Appeal Board (Denny's, Inc.),* 120 Pa. Cmwlth.320, 548 A.2d 680 (1988); *Jones & Laughlin Steel Corp. v. Workmen's Compensation Appeal Board (White),* 92 Pa.Cmwlth. 318, 500 A.2d 494 (1985). Similarly, when Employer filed its answer to Claimant's set aside petition, it had no reasonable basis to challenge Claimant's disability. Unlike the majority, I do not believe that Employer, having improperly obtained the final receipt, should be able to rely on a post hoc medical examination "to show that the status quo existed—that is, that the termination of benefits which had been effectuated by [C]laimant's signing of a final receipt was warranted by the evidence." (Majority op. at 12.)

Employer here filed no petition and, thus, sought no relief at all; the only matter before the WCJ was Claimant's petition to set

---

5. This regulation also provides that, if termination or suspension cannot be accomplished as indicated in subsection (a), dealing with final receipt, or subsection (b), dealing with agreement between the employer and the employee, the employer *shall* file a petition for termination or suspension, as provided under section 413 of the Act, 77 P.S. § 772.

6. In this way, the present case presents a situation which is even more problematic than that in *Hutter* in regard to notice. I find it noteworthy that in *Hutter,* unlike the present case, the employer did file "termination petitions," albeit invalid ones, prior to the claimant's signing of a final receipt.

aside a final receipt. Remarkably, after concluding that Claimant satisfied his burden of proof on that matter, thus reviving the original compensation agreement as if Claimant had never signed the final receipt, the WCJ used Claimant's petition to set aside the final receipt to grant Employer a termination of Claimant's benefits. In *Boehm v. Workmen's Compensation Appeal Board,* 133 Pa. Cmwlth. 455, 576 A.2d 1163 (1990), we stressed that the grant of termination where an employer only requests modification circumvents the humanitarian objectives of the Act to benefit claimants. Certainly then, the grant of an unsolicited termination where an employer files no petition at all clearly is contrary to the Act's intent.

Because there was no petition authorizing the WCJ to terminate Claimant's benefits, and the circumstances do not otherwise warrant termination, I would reverse the Board's order to the extent that it affirmed the termination of Claimant's benefits as of May 23, 1994. In all other respects, I would affirm the Board.[7]

---

7. Due to my disposition of Claimant's first issue, I would have no need to consider Claimant's other arguments.