## IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Lanetta Durbin, :
                Petitioner :
                 :
        v. : No. 289 C.D. 2016
                 : Submitted: July 15, 2016
Workers' Compensation Appeal :
Board (Pennsylvania Hospital of :
the University of PA Health System), :
                Respondent :

BEFORE:  HONORABLE P. KEVIN BROBSON, Judge
           HONORABLE MICHAEL H. WOJCIK, Judge
           HONORABLE JAMES GARDNER COLINS, Senior Judge

*OPINION NOT REPORTED*

**MEMORANDUM OPINION**
**BY JUDGE BROBSON**                **FILED:  November 21, 2016**

Lanetta Durbin (Claimant) petitions this Court for review of an order of the Workers' Compensation Appeal Board (Board), dated November 30, 2012, which the Board made final by order, dated January 29, 2016.  The Board's order, dated November 30, 2012, vacated in part, remanded in part, and affirmed in part, an order of Workers' Compensation Judge Andrea McCormick (WCJ), dated December 14, 2010, which granted Claimant's claim petition based on allegations in the claim petition deemed admitted due to Pennsylvania Hospital of the University of Pennsylvania Health System's (Employer) failure to file a timely answer.  For the reasons discussed below, we now affirm.

The following facts are not in dispute.  From some date uncertain until December 23, 2008, Claimant was employed by Employer in its dietary department.  Claimant alleges that, during her last week of work, she suffered

psychological trauma, depression, and post-traumatic stress disorder when certain unnamed coworkers violated HIPAA[1] regulations by revealing to other coworkers that Claimant's husband had a particular medical condition. Claimant first learned that her husband had been diagnosed with a medical condition in 2007, and she did not reveal this information to friends, family, or coworkers. Her husband was undergoing treatment for his condition at Pennsylvania Hospital where Claimant was employed. On December 23, 2008, unnamed coworkers confronted Claimant and inquired about her husband's condition. Claimant alleged that certain coworkers used Employer's medical records database to look up information regarding her husband's treatment and related that information to other coworkers. Claimant stated that she left work and was unable to return due to the psychological trauma resulting from her husband's status being revealed to her coworkers and the stigma associated with the diagnosis.

On July 10, 2009, Claimant filed a claim petition against Employer for workers' compensation benefits. Employer failed to file a timely answer to the claim petition. The matter was assigned to the WCJ, who issued a notice of hearing on August 7, 2009. The hearing took place on September 1, 2009, and Employer subsequently filed an answer to the claim petition on September 3, 2009. The WCJ scheduled a hearing for October 15, 2009, to afford Employer an opportunity to dispute receipt of proper notice of the claim petition having been filed or to offer adequate excuse for the late filing of the answer.[2] Employer

---

[1] HIPAA refers to the Health Insurance Portability and Accountability Act of 1996 (HIPAA), 29 U.S.C. § 1181-6039(F).

[2] *See Yellow Freight Systems, Inc. v. Workmen's Comp. Appeal Bd. (Madara)*, 423 A.2d 1125 (Pa. Cmwlth. 1981).

provided no adequate excuse and did not present evidence that it did not receive notice of the claim petition. In a decision and order, circulated November 9, 2009, the WCJ held that Employer failed to file a timely answer to the claim petition. Accordingly, the WCJ concluded that all allegations in the claim petition were deemed admitted pursuant to Section 416 of the Workers' Compensation Act, Act of June 2, 1915, P.L. 735, *as amended*, 77 P.S. § 821.

Employer appealed the November 9, 2009 order to the Board, arguing that it was effectively a final judgment. By opinion circulated on September 9, 2010, however, the Board concluded that the order was interlocutory and not subject to appeal. The Board explained that the untimely answer admitted facts rather than legal conclusions and only admitted liability through June 30, 2009, the last date that an answer could have been filed.[3] The Board further noted that a rebuttable presumption exists that disability continues beyond the last day the answer could be filed and that an employer bears the burden to produce evidence to overcome that presumption.[4] Accordingly, the Board remanded the matter to the WCJ to hear Employer's evidence that Claimant's disability was not ongoing and to issue a final determination.

On remand, Claimant presented the deposition testimony of Wolfram Rieger, M.D., a board-certified psychiatrist who examined Claimant on May 13, 2010. In opposition to the claim petition, Employer presented the

---

[3] *Ghee v. Workmen's Comp. Appeal Bd. (Univ. of Pa.)*, 705 A.2d 487 (Pa. Cmwlth. 1997), *appeal denied*, 725 A.2d 184 (Pa. 1998).

[4] *Rite Aid v. Workers' Comp. Appeal Bd. (Bennett)*, 709 A.2d 447 (Pa. Cmwlth. 1998), *appeal denied*, 796 A.2d 988 (Pa. 1999).

deposition testimony of Claimant and its own medical expert, Gladys Fenichel, M.D.

Dr. Rieger testified that Claimant was afraid to return to Pennsylvania Hospital and suffered from nightmares, panic attacks, and difficulty sleeping. Dr. Rieger diagnosed Claimant with post-traumatic stress disorder qualified as "a major devastating emotional reaction and severe adjustment disorder with anxiety and depression." (Supplemental Reproduced Record (S.R.R.) at 4b). He also noted that Claimant suffered from major depression and had a history of psychological symptoms from 2007 to 2009 based on notes from Claimant's prior physician. Dr. Rieger concluded that Claimant became acutely disabled as of December 23, 2008.

Claimant testified that she worked in the dietary department for Employer for eight years and was charged with stocking refrigerators with food items. Claimant testified that she was not diagnosed with depression before December 23, 2008, and that she had never previously complained of depression. Claimant first learned of her husband's diagnosis in 2007 and did not tell any family members or friends the diagnosis. Claimant discussed her concerns about her coworkers' knowledge of her husband's diagnosis with her supervisor, Carolyn Towbin, who referred her to Delaware County Health Services. During her initial therapy sessions, she complained of panic attacks, difficulty sleeping, and crying. She later treated with a psychiatrist, Steve Levy, M.D.

Employer's medical expert, Dr. Fenichel, testified that she examined Claimant on January 27, 2010. Dr. Fenichel found that Claimant gave a consistent history of the disclosure of her husband's medical status and her reaction to that disclosure. She noted that Claimant was well-groomed, did not cry or show signs

4

of depression or anxiety during the interview and, in May 2009, had gone on a vacation with four other women to the Bahamas. Based on her examination, Dr. Fenichel concluded that Claimant did not have a psychiatric diagnosis or disability related to events that occurred in her workplace. Dr. Fenichel also opined that, if Claimant had sustained a work-related mental injury, she had fully recovered from that injury as of the date of her examination. Additionally, Dr. Fenichel explained that Claimant had a documented history of anxiety and depression and that an individual diagnosed with anxiety and depression did not need a particular life event to occur in order to experience an increase in symptoms.

On the issue of ongoing disability, the WCJ found Dr. Fenichel more credible than Dr. Rieger, reasoning that Dr. Fenichel had based her opinions on observations of Claimant and had a complete working understanding of Claimant's work injury and prior medical history. The WCJ acknowledged that "a medical expert's testimony has been found incompetent when [s]he ignores or rejects an acknowledged work injury." (S.R.R. at 6b). The WCJ, however, distinguished the instant case because the acknowledged work injury was based on a legal doctrine. The WCJ reasoned that prior case law involved a medical expert testifying at a termination proceeding where the work injury had previously been established by competent medical testimony. In the instant case, the WCJ found that a medical expert need not acknowledge an injury that was established by a deemed admission rather than medical evidence.

Additionally, the WCJ noted that Employer had proffered other evidence that Claimant had recovered from her mental injury. Employer presented surveillance videos of Claimant, dated September 18 and 19, 2009, and January 14

5

and 20, 2010. The September 18, 2009 video showed Claimant visiting her grandmother in the Pennsylvania Hospital. The remaining videos showed Claimant walking outside of her house and interacting with different individuals. Employer also produced a news article showing Claimant had run for a local public office position. The WCJ stated that this evidence demonstrated that Claimant was no longer a recluse. The WCJ emphasized that, although Claimant stated that she only went into the hospital to visit her dying grandmother, Claimant had not produced a death certificate. The WCJ issued a final decision circulated on December 14, 2010, in which she concluded that Claimant was disabled from December 23, 2008, to January 27, 2010, due to mental injuries resulting from a work-related incident.

Both parties appealed to the Board. Employer argued that the WCJ erred in granting the claim petition based on the deemed admissions because the late answer did not admit that Claimant's mental injury arose in the course of her employment or as a result of an abnormal working condition. Claimant argued that the Board erred in terminating her benefits, because the Board relied on Dr. Fenichel's opinion, which Claimant contended was incompetent. By opinion and order mailed on November 30, 2012, the Board vacated in part, affirmed in part, and remanded in part. The Board concluded that the admitted facts demonstrated that Claimant's injury was at her workplace during the course of her employment. The Board, however, also concluded that the existence of an "abnormal working condition" was a legal conclusion which could not be admitted as a result of a late answer and that the WCJ made no specific findings about an abnormal working condition. Accordingly, the Board remanded the case to the WCJ to consider the existing record to determine whether Claimant's mental injury

6

resulted from an abnormal working condition. The Board additionally affirmed the WCJ with respect to the termination of Claimant's benefits, reasoning that the WCJ properly weighed the conflicting medical expert opinions and found Dr. Fenichel's testimony that Claimant had fully recovered from any work-related injury as of January 27, 2010, to be more credible. The Board specifically rejected Claimant's contention that Dr. Fenichel did not acknowledge that Claimant suffered a work-related injury, thereby rendering her opinion incompetent.

By opinion circulated on October 1, 2015, the WCJ concluded that Claimant had proven that her mental state was an objective reaction to an abnormal working condition. The WCJ found that it was abnormal for Claimant's coworkers to obtain her husband's confidential medical records and disclose them in the workplace in violation of HIPAA. Further, the WCJ found Claimant's reaction to be objective considering the sensitive nature of the information and the social stigma attached to the diagnosis.

Claimant appealed to the Board from the WCJ's determination, requesting that the Board affirm the WCJ's October 1, 2015 determination and make the Board's November 30, 2012 order a final, appealable order.[5] On January 29, 2016, the Board granted Claimant's request, noting that neither party contested the WCJ's October 1, 2015 determination.

Claimant petitioned this Court for review, raising three issues on appeal: (1) whether Dr. Fenichel's testimony was incompetent because she rejected Claimant's acknowledged work injury; (2) whether the WCJ erred in

---

[5] *See Shuster v. Workers' Comp. Appeal Bd. (Pa. Human Relations Comm'n)*, 745 A.2d 1282 (Pa. Cmwlth. 2000), *appeal denied*, 781 A.2d 151 (Pa. 2001).

7

finding that Claimant had the burden to show continued disability; and (3) whether the WCJ erred by taking an adverse inference from Claimant's failure to introduce a death certificate.[6]

In a termination proceeding, the employer bears the burden of proof to establish that the work injury has ceased.[7] *Udvari v. Workmen's Comp. Appeal Bd. (USAir, Inc.)*, 705 A.2d 1290, 1293 (Pa. 1997). An employer may satisfy this burden by presenting unequivocal and competent medical evidence of the claimant's full recovery from her work-related injuries. *Westmoreland Cnty. v. Workers' Comp. Appeal Bd. (Fuller)*, 942 A.2d 213, 217 (Pa. Cmwlth. 2008).

Claimant argues that the WCJ erred in concluding that Dr. Fenichel's testimony was unequivocal and constituted competent medical evidence, because Dr. Fenichel rejected Claimant's acknowledged work injury. Employer argues that

---

[6] In reviewing an appeal from a decision of an administrative agency, our scope of review is limited to determining whether any constitutional rights have been violated, whether any errors of law exist, or whether necessary findings of fact are supported by substantial evidence. *Philadelphia Newspapers, Inc. v. Workers' Comp. Appeal Bd. (Guaracino)*, 675 A.2d 1213, 1215 (Pa. 1996). When questions of law are presented, our scope of review is plenary. *Taulton v. Workers' Comp. Appeal Bd. (USX Corp.)*, 713 A.2d 142 (Pa. Cmwlth. 1998).

[7] As a point of clarification, Employer did not file a termination petition in the instant case. *See Frontini v. Workers' Comp. Appeal Bd. (Parks Moving & Storage)*, 702 A.2d 8 (Pa. Cmwlth. 1997) (holding that employer need not file a termination petition when claimant on notice that employer is seeking termination of benefits), *appeal denied*, 724 A.2d 936 (Pa. 1998). Rather, as a result of Employer's deemed admissions, Claimant's disability was presumed to be ongoing, and Employer offered evidence that Claimant was fully recovered from any work-related injury in order to rebut this presumption. The WCJ credited Employer's evidence and found Claimant had fully recovered as of January 27, 2010. The WCJ, therefore, awarded workers' compensation benefits for a closed period of time (*i.e.*, from the date of injury to the date of full recovery), which resulted in Claimant's benefits being terminated. Our analysis, therefore, as to whether the WCJ and Board properly terminated Claimant's benefits is the same as if Employer had filed a termination petition.

8

Dr. Fenichel's testimony is competent medical evidence, because Dr. Fenichel assumed that a work-related injury occurred but concluded that Claimant had fully recovered as of the date of her examination.

We have consistently held that a medical opinion that does not recognize the work-relatedness of an injury previously determined to be work-related is insufficient to support a termination of benefits. *Westmoreland Cnty.*, 942 A.2d at 218. If a physician, in his or her medical opinion, does not believe that the claimant suffered a work-related injury, but assumes based on the record that a work-related injury occurred, that physician may competently testify that the claimant has fully recovered from any presumed injury. *Id.* at 219; *To v. Workers' Comp. Appeal Bd. (Insaco, Inc.)*, 819 A.2d 1222, 1225 (Pa. Cmwlth. 2003). A physician's testimony may also be considered competent where the physician notes that there is no indication of a present injury, but goes on to opine that the claimant has made a full and complete recovery from any injury he or she may have sustained during the course of her employment. *Jackson v. Workers' Compensation Appeal Board (Resources for Human Development)*, 877 A.2d 498, 503 (Pa. Cmwlth. 2005).

In contrast, we have held a medical expert's testimony to be incompetent where that expert testifies that the claimant suffered from an injury different from the accepted work injury and has subsequently recovered from an injury other than the accepted work injury. *See Gillyard v. Workers' Comp. Appeal Bd. (Pa. Liquor Control Bd.)*, 865 A.2d 991 (Pa. Cmwlth.) (holding employer's medical expert's testimony was incompetent where employer's doctor believed that work injury was lumbar sprain instead of accepted work injury of chronic sciatica and specifically testified that claimant had not recovered from

9

anything other than lumbar sprain), *appeal denied*, 882 A.2d 1007 (Pa. 2005); *GA & FC Wagman, Inc. v. Workers' Comp. Appeal Bd. (Aucker)*, 785 A.2d 1087 (Pa. Cmwlth. 2001) (holding employer's medical expert's testimony was incompetent where expert testified that claimant was fully recovered from sprain and degenerative disc disease, but not from exacerbation of pseudoarthrosis, which was accepted work injury).

In the instant case, Dr. Fenichel testified that it was her opinion that "[Claimant] did not sustain any psychiatric injury as a result of the injury date noted as [December 23, 2008.]" (Reproduced Record (R.R.) at 58-59). Claimant's counsel later asked Dr. Fenichel to assume that Claimant suffered a work-related injury:

> Q: . . . Because of this legal issue, I need you to assume that some work injury occurred on [December 23, 2008.]
> Within a reason[able] degree of medical certainty, do you have an opinion as to whether Ms. Durbin fully recovered from any work injury that she may have sustained? We will give this an entry date of [December 23, 2008.]
>
> A: Yes.
> I have an opinion. It's my opinion that Ms. Durbin had fully recovered from any work injuries she may have sustained as of the date of my evaluation of her on [January 27, 2010.]

(R.R. at 67-68). Assuming that Claimant had sustained a work injury, Dr. Fenichel concluded within a reasonable degree of medical certainty that Claimant had fully recovered from any mental injury sustained during the course of her employment. *See To*, 819 A.2d at 1225 (holding that employer's medical expert's testimony was competent where expert testified that "it was his opinion, within a reasonable degree of medical certainty, having reviewed all the records, performed an

10

examination and taken a history, that since there was no evidence of medical impairment, Claimant had made a full and complete recovery from any injury he may have sustained in the course of his employment."). Thus, Dr. Fenichel's testimony was competent medical testimony, and the WCJ did not err in relying on her testimony as substantial evidence that Claimant had fully recovered from any work-related injuries.

Claimant also argues that the WCJ erred in placing the burden on her to demonstrate continued disability and in imposing an adverse inference due to Claimant's failure to produce a death certificate for her grandmother. Employer does not argue that the WCJ did not err in either respect, but instead it argues that any such errors were harmless.

The Board acknowledged that the WCJ erred in placing the burden on Claimant to establish ongoing disability. (S.R.R. at 18b n.4). The Board, however, also noted that the error was harmless because Employer had otherwise met its burden of proving that Claimant had fully recovered from her work injury. We have previously held that the misplacement of the burden of proof may constitute harmless error if there would not have been a different result had the burden been correctly placed. *City of Philadelphia v. Civil Service Comm'n*, 824 A.2d 346, 349 (Pa. Cmwlth. 2003), *aff'd*, 879 A.2d 146 (Pa. 2005). Here, the record and the WCJ's findings of fact clearly demonstrate that the outcome would not have changed had the WCJ placed the burden of proof on Employer. The WCJ found Dr. Fenichel's testimony that Claimant had fully recovered from her injury to be more credible than Dr. Rieger's testimony. Considering the surveillance video and the article demonstrating that Claimant was running for public office, the WCJ concluded that Claimant was not a recluse.

11

Based on these findings, the WCJ concluded that Claimant no longer suffered from an ongoing mental disability. This evidence was sufficient to carry Employer's burden to rebut the presumption that Claimant's disability was ongoing, and, in fact, Employer met its burden to establish that it was entitled to a termination of benefits because Claimant had fully recovered from her injury. Thus, Claimant could not have obtained a different outcome had the burden been correctly placed.

Claimant also argues that the WCJ imposed an adverse inference due to Claimant's failure to produce her grandmother's death certificate. We note that the WCJ did not expressly state that she was imposing an adverse inference, but instead, simply mentioned in her findings of fact that Claimant did not produce a death certificate. To the extent that the WCJ may have imposed an adverse inference from Claimant's failure to produce a death certificate, we hold that such an imposition constitutes harmless error. Employer did not contest that Claimant's grandmother was actually ill or dying, and the WCJ did not note any doubt regarding Claimant's grandmother's condition. Instead, the WCJ found that Claimant's ability to visit her grandmother supported a finding that Claimant was not so fearful of her former workplace that it would preclude her from visiting a sick relative.

Claimant's ability to enter her former workplace, along with other evidence, supported the WCJ's finding that Claimant was not a recluse. As noted above, the WCJ had substantial evidence, such as the surveillance videos and the article demonstrating that Claimant was running for public office, to support this finding regardless of any adverse inference. Thus, the WCJ's finding that claimant was not a recluse was supported by substantial evidence other than the fact that Claimant visited her grandmother in the hospital. *See Gallo v. Workers' Comp.*

12

*Appeal Bd. (United Parcel Service)*, 504 A.2d 985, 988 (Pa. Cmwlth. 1986); *see also In re Pender*, 25 A.3d 453, 457 (Pa. Cmwlth. 2011) ("Even if [the trial court] did rely on that testimony, if anything, it was harmless error because there was more than sufficient evidence to support the trial court's conclusion."), *appeal denied*, 38 A.3d 827 (Pa. 2012). Accordingly, any error in imposing an adverse inference from Claimant's failure to produce a death certificate is harmless.

For the reasons set forth above, the Board did not err in concluding that the WCJ properly considered Dr. Fenichel's testimony as competent medical evidence in support of the termination of Claimant's benefits. Further, the Board did not err in concluding that any errors by the WCJ regarding the burden of proof and an adverse inference from Claimant's failure to produce a death certificate constitute harmless error.

Accordingly, we affirm the Board's order.

P. KEVIN BROBSON, Judge

13

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Lanetta Durbin,                              :
                Petitioner       :
                                    :
           v.                                :    No. 289 C.D. 2016
                                    :
Workers' Compensation Appeal       :
Board (Pennsylvania Hospital of      :
the University of PA Health System),   :
                Respondent     :

# O R D E R

AND NOW, this 21st day of November, 2016, the order of the Workers' Compensation Appeal Board is AFFIRMED.

                                         _____
                                         P. KEVIN BROBSON, Judge